## EX PARTE YERGER.

1. In all cases where a Circuit Court of the United States has, in the exercise of its original jurisdiction, caused a prisoner to be brought before it, and has, after inquiring into the cause of detention, remanded him to the custody from which he was taken, this court, in the exercise of its appellate jurisdiction, may, by the writ of *habeas corpus*, aided by the writ of *certiorari*, revise the decision of the Circuit Court, and if it be found unwarranted by law, relieve the prisoner from the unlawful restraint to which he has been remanded.

2. The second section of the act of March 27th, 1868, repealing so much of the act of February 5th, 1867, as authorized appeals from the Circuit Courts to the Supreme Court, does not take away or affect the appellate jurisdiction of this court by *habeas corpus*, under the Constitution and the acts of Congress prior to the date of the last-named act.

On motion and petition for writs of *habeas corpus and certiorari*, the case being thus:

The Constitution ordains in regard to the judiciary as follows:     —

" The judicial power of the United States shall be vested in one Supreme Court and in such inferior courts as the Congress may from time to time ordain and establish. The judicial power shall extend to all cases in law or equity arising under this Constitution, the laws of the United States," &c.

" In all cases affecting ambassadors, other public ministers, and consuls, and those in which a State shall be a party, the Supreme Court shall have original jurisdiction. In all the other cases before mentioned, the Supreme Court shall have appellate jurisdiction, both as to law and fact, with such exceptions, and under such regulations as the Congress shall make."

---

* 7 Hill, 62.

It makes provision, also, in regard to the writ of *habeas corpus*, thus:

"The privilege of the writ of *habeas corpus* shall not be suspended unless when in cases of rebellion or invasion the public safety may require it."

With these provisions in force, as fundamental law, the first Congress by the 14th section of the act of September 24th, 1789,* to establish the judicial courts of the United States, after certain enactments relating to the Supreme Court, the Circuit Courts, and the District Courts of the United States, enacted:

"That all the before-mentioned courts shall have power to issue writs of *scire facias*, *habeas corpus*, and all other writs not especially provided for by statute, which may be necessary for the exercise of their respective jurisdictions, and agreeable to the principles and usages of law, and that either of the Justices of the Supreme Court, as well as Judges of the District Courts. shall have power to grant writs of *habeas corpus* for the purpose of and inquiry into the cause of commitment: *Provided,* That writs of *habeas corpus* shall in *no case extend to prisoners in jail unless they are in custody under or by color of the authority of the United States, or are committed for trial before some court of the same, or are necessary to be brought into court to testify.*"

By statute of 1833,† the writ was extended to prisoners confined under any authority, whether State or National, for any act done or omitted in pursuance of a law of the United States, or of any order, process, or decree of any judge or court of the United States; and by an act of 1842,‡ to prisoners, being subjects or citizens of foreign states, in custody under National or State authority for acts done or omitted by or under color of foreign authority, and alleged to be valid under the law of nations.

The writ was, however, much further extended, by an act of the 5th February, 1867,§ entitled "An act to 'amend' the

---

* 1 Stat. at Large, 81.    † 4 Id. 634.    ‡ 5 Id. 539.    § 14 Id. 385.

Judiciary Act of 1789, above quoted." This act of 1867, provided:

" That the several courts. of the United States, and the several justices and judges of such courts, within their respective juris-dictions, *in addition to the authority already conferred* by law, shall have power to grant writs of *habeas corpus in all cases where any person may be restrained of his or her liberty, in violation of the Constitution, or of any treaty. or law of the United States,*" &c.

And after providing for the awarding and hearing of the writ, the act proceeds:

" From the final decision of any judge, justice, or courts inferior to the Circuit Court, *appeal* may be taken to the Circuit Court of the United States for the district in which the. said cause is heard, .and from the judgment *of said Circuit Court to the Supreme Court of the United States."*

Finally, by an act of March 27th, 1868,* passed after an appeal in a particular case, the subject of much party discus-sion, under the above-quoted act of 1867, from the Circuit Court to the Supreme Court of the United States, had been argued before this latter court, had been taken into advise-ment by it—a history more particularly set forth in *Ex parte McCardle*†—Congress passed an act providing by its second section :

" That *so much of the act,* approved February 5th, 1867, entitled 'An act to amend an act to establish the judicial courts of the United States, approved .September 24th, 1789,' *as authorized an appeal* from the judgment of the Circuit Court to the Supreme Court of the United States, or the exercise of any such juris-diction by said Supreme Court *on appeals* which have been or may hereafter be taken, be, and the same is hereby, repealed."

In this state of constitutional and statutory provisions, a writ of *habeas corpus* upon the prayer of one Yerger, addressed to the Circuit Court of the United States for the Southern District of Mississippi, was directed to certain military officers

---

* 15 Stat. at Large, 44.                    † 7 Wallace, 509.

holding the petitioner in custody, commanding them to produce his body, and abide the order of the court.

In obedience to this writ, the petitioner was brought into court by Major-General R. S. Granger, who made return in due form, certifying the cause of detention to be, that the petitioner had been arrested, and was held for trial, upon a charge of murder, by a *military commission*, under the act of Congress of the 2d of March, 1867, "to provide for the more efficient government of the rebel States."

Upon this return, the petitioner was ordered into the custody of the marshal, and the court proceeded to hear argument. It was admitted on the part of the United States, that the petitioner was a private citizen of the State of Mississippi; that he was being tried by the military commission, without a jury, and without presentment or indictment by a grand jury; and, that he was not, and never had been, connected with the army and navy of the United States, or with the militia in active service in time of war or invasion.

Upon this case, the Circuit Court adjudged that the imprisonment of the petitioner was lawful, and passed an order that the writ of *habeas corpus* be dismissed, and that the prisoner be remanded to the custody of the military officer by whom he had been brought into court, to be held and detained for the purposes, and to answer the charge set forth in the return.

To obtain the reversal of that order, and relief from imprisonment, the petitioner now asked for a writ of *certiorari* to bring here for review the proceedings of the Circuit Court, and for a writ of *habeas corpus* to be issued, under the authority of this court, to the officers to whose custody he was remanded.

The questions therefore were:

1. Whether the action of the Circuit Court was to be regarded as the cause of the commitment, to which the act of 1789 applies the writ of *habeas corpus;* and whether, if found unlawful, relief might be granted, although the original imprisonment was by military officers for the purpose of a trial before a military commission.

2. If the court possessed this jurisdiction, had it been taken away by the 2d section of the act of March, 1868 ?

Upon the suggestion of the Attorney-General, made in view of the importance of the questions which would probably arise, if the case was brought to hearing, the court ordered preliminary argument upon the jurisdiction of the court to issue the writ prayed for; the only question, therefore, raised in the present stage of the case.

*Messrs. P. Phillips and Carlisle, in support of the motion,* conceding that this court could grant the writ only in the exercise of the appellate jurisdiction, yet argued, that the writ of *habeas corpus*, being a bulwark of freedom, demanded a liberal interpretation of clauses in the Constitution and statutes relating to it, so as to allow and preserve the writ, rather than to withhold or destroy it; that the grant of the writ as here invoked was in the exercise of an appellate power; that, as was decided in *Ex parte Milligan*,[*] in the face of a powerful argument by Mr. Stanbery to the contrary, proceeding in *habeas corpus* was a suit, a process of law, by which the party sought to obtain his rights. The proceeding in the Circuit Court was therefore a suit; and, undoubtedly, there had been an order in it; an order, namely, that the writ of *habeas corpus* be dismissed, and the prisoner remanded to answer the charge set forth in the return. Yerger, the prisoner in this case, was, therefore, at this time, in the possession of the military authorities, in virtue of an order of the Circuit Court. The review by this court of such an order, was an exercise of appellate power, and of no other power.

It was, therefore, unnecessary to invoke such cases as *In re Kaine*.[†]

But if the exercise of the power which was asked, were not the exercise of a power in review of a decision of the Circuit Court, that case would still authorize this application. What was that case ? Kaine was arrested as an alleged fugitive from justice, and brought before *a United States Com-*

---

[*] 4 Wallace, 2.    [†] 14 Howard, 103.

*missioner*, who made an order committing him to custody, to abide the order of the President. A writ of *habeas corpus* was then issued by the Circuit Court of the United States for the Southern District of New York. Kaine was brought before that court. After a hearing, the writ was dismissed, and Kaine was remanded and continued in the custody of the marshal under the arrest and commitment *by the process of the commissioner.*

An application was finally made in this court for a writ of *habeas corpus* and a *certiorari* to the Circuit Court, in order to review the order made by that court, remanding the prisoner to the custody of the marshal.

On the hearing of this motion, the writ was refused, not because of any doubt of the jurisdiction of the court to award the writ, but because a majority of the court was of opinion that on the *merits* the prisoner was not entitled to his discharge. No member of the court expressed an opinion that the court did not have power, in the exercise of its appellate jurisdiction, to award the writ in order to "inquire into the cause of the commitment" made by the Circuit Court, and to review the judgment of that court; which, this court considered, had been made by the order of remand to the commissioner; though no power might exist in this court to review directly the act of the commissioner himself. On the contrary, the jurisdiction was plainly asserted.

In *Ex parte Wells*,* convicted of murder, and whose sentence was commuted by the President to imprisonment for life, a *habeas corpus* was issued by the Circuit Court. On the return, the position taken by the prisoner that the pardon was absolute and the condition void, was overruled. The writ was dismissed and the prisoner remanded. On application to this court for *habeas corpus* to reverse this proceeding, all the judges, but Curtis and Campbell, JJ., maintained the jurisdiction. Curtis, J., refers to his denial of the jurisdiction in Kaine's case. It will be seen that this denial is placed on the ground that "the custody of the prisoner was at no time

---

* 18 Howard, 307.

changed." He admits " that when a prisoner is brought into court, he is in the power and under the control of the court; but unless the court make some order, changing the custody, the original custody continues."

The question being, whether the order remanding to custody made by the Circuit Court is the "cause of commitment" referred to in the act of 1789, and so subject to the appellate jurisdiction, by means of the *habeas corpus*, the turning-point in the opinion of the dissenting judge is, whether the Circuit Court has made an order, when the prisoner is produced, changing the original custody. If it has, then it is admitted, that when he is remanded to the original custody, the order or judgment effecting this is the " cause of commitment," and may be reviewed in this court under the provisions of the act of 1789.

The entry in this case is precisely of that character which gives jurisdiction according to the test made by Curtis, J.

When the prisoner was brought into court, he was ordered into the custody of the marshal of the district, and there he remained until he was remanded.

No judge of this court, since its organization, except Baldwin, J., has ever doubted the jurisdiction in such a case as this. That judge fell into the error of holding that the appellate jurisdiction of this court could only be exercised by appeal or writ of error. This opinion was given by him on an application for mandamus (in *Ex parte Crane*), but the court granted the writ.

Independent of authority, it is clear, on principle, that the exercise of the appellate power is not limited to any particular *form*. When the object is to revise a judicial proceeding the *mode* is wholly unimportant, and a writ of *habeas corpus*, mandamus, certificate of division, writ of error, appeal, or *certiorari* may be used, if the legislature so determine.*

On the second point, the counsel contended that the act of 1867 did not repeal the act of 1789, but, on the contrary, recognized it. Its title was " to amend " that act. It

---

* 2 Story's Commentaries on the Constitution, 570.

gave powers in addition to those given by the old act; including an appeal to this court. A repeal is not to be presumed where the language left the intention of the legislature doubtful.* The act of 1868 took away nothing but the appeal here. But even if the act of 1867 repealed the act of 1789, and the act of 1868 repealed that of 1867, the old act would be revived; a repeal of a repealing statute reviving the original statute.

*Mr. Hoar, Attorney-General of the United States,* contended that the addressing of the writ to General Granger would be an exercise of original jurisdiction alone. He does not hold the prisoner under any order or decree of the Circuit Court, but holds him by military power. The order of remand made no new commitment, and issued no new process as an instrument for it, but only pronounced the old process valid, and consequently the continuance of the commitment under it legal. The custody was at no time changed. Certainly, when a prisoner is brought into court upon the return of a *habeas corpus ad subjiciendum*, he was then in the power and under the control of the court. The court might admit him to bail, and might also take order for the future production of the prisoner without bail; but in all cases, until the court made some order changing the custody, either for the care or security of the prisoner, or founded on the illegality of his commitment, the original custody continued. In this case no such order was made. It might as well be said, when a child is left in possession of his father after a hearing on *habeas corpus* seeking to get him out of it, that the father holds his child by judgment of the court, as here that the prisoner is in General Granger's custody by judgment of the Circuit Court. In the case of the child, the father holds the child in virtue of his parental right, which the court perceiving, has asserted. So in the case of the petitioner, the court has simply let him alone; left him where it found him.

This being the case, the writ will not lie; for certainly this

---

* City of Galena *v.* Amy, 5 Wallace, 705.

court cannot exercise appellate control over the proceeding of a military commission.

The decision *In re Kaine* has no bearing. The refusal was on merits. Any admission or assertion of jurisdiction in such a case is of no value. Some judges are fond of *dicta* and irrelative assertion and argument. When denying an application on merits, they will concede that they have jurisdiction, and *vice versâ*. But the point adjudged is the only matter of value, and *In re Kaine*, this point was, that the case was without merits. *Metzger's case,*[*] on the other hand, seems much in point. It was the case of an application for the writ by a prisoner committed to the custody of the marshal by the district judge, at his chambers, under the French treaty of extradition.

This court refused the writ on the ground that there is no form in which an appellate power can be exercised by it over the proceedings of a district judge at his chambers. The court say: "He exercises a special authority, and the law has made no provision for the revision of his judgment. It cannot be brought before the District or Circuit Court; consequently, cannot, in the nature of an appeal, be brought before this court. The exercise of an original jurisdiction only could reach such a proceeding, and this has not been given by Congress, if they have the power to confer it."

The *habeas corpus* issued with the *certiorari* as an adjunct to the appellate power, is only permitted where the custody of the prisoner is an essential part of the judgment or decree from which the appeal is taken.

The repeal by the statute of March 27th, 1868, of so much of the act of February 5th, 1867, as granted appellate power to this court in cases of this nature, was intended and should be construed as taking away, not the whole appellate power in cases of *habeas corpus*, but the appellate power in cases to which that act applied. It did not mean merely to substitute a cumbrous and inconvenient form of remedy for a direct and simple one.[†]

---

[*] 5 Howard, 176        † Ex parte McCardle, 7 Wallace, 506.

*Reply.*—1. The prisoner *was* in the custody of General Granger. The *habeas corpus* below took him out of that custody. He went into the custody of the court; the custody was changed into its charge completely. If the court had liberated him, would he not have been liberated by decree of the court? Why, when instead of being liberated, he is sent away into the custody of General Granger, is he not so sent by decree of the court? If General Granger were sued by Yerger for false imprisonment, could not; and would not the order of remand be pleaded in bar? In all cases of judicial decree, the decree does but pronounce an old right valid, and continue an original title. A. sues B. to recover land which B. and his ancestors for generations have owned and been possessed of. The court gives judgment for B. Does B. not hold the land by decree of the court? Yet the court has only left him where he was. Perceiving a right to it, the court has asserted it. The case of Kaine was subsequent to that of Metzger, and a peculiar case at best, and controls it.

2. The argument of the Attorney-General confounds "appeal," a specific form of remedy given by the act of 1867, with "appellate power," which existed in another form, and was conferred by a prior act. But after all, it only asks that the appellate power may be considered as repealed in cases to which that act (the act of 1867) applied. But this act is more comprehensive than any act whatever.

The CHIEF JUSTICE delivered the opinion of the court.

The argument, by the direction of the court, was confined to the single point of the jurisdiction of the court to issue the writ prayed for. We have carefully considered the reasonings which have been addressed to us, and I am now to state the conclusions to which we have come.

The general question of jurisdiction in this case resolves itself necessarily into two other questions:

1. Has the court jurisdiction, in a case like the present, to inquire into the cause of detention, alleged to be unlawful, and to give relief, if the detention be found to be in fact

unlawful, by the writ of *habeas corpus,* under the Judiciary Act of 1789?

2. If, under that act, the court possessed this jurisdiction, has it been taken away by the second section of the act of March, 27, 1868,* repealing so much of the act of February 5, 1867,† as authorizes appeals from Circuit Courts to the Supreme Court?

Neither of these questions is new here. The first has, on several occasions, received very full consideration, and very deliberate judgment.

A cause, so important as that which now invokes the action of this court, seems however to justify a reconsideration of the grounds upon which its jurisdiction has been heretofore maintained.

The great writ of *habeas corpus* has been for centuries esteemed the best and only sufficient defence of personal freedom.

In England, after a long struggle, it was firmly guaranteed by the famous Habeas Corpus Act of May 27, 1679,‡ "for the better securing of the liberty of the subject," which, as Blackstone says, "is frequently considered as another Magna Charta."§

It was brought to America by the colonists, and claimed as among the immemorial rights descended to them from their ancestors.

Naturally, therefore, when the confederated colonies became united States, and the formation of a common government engaged their deliberations in convention, this great writ found prominent sanction in the Constitution. That sanction is in these words:

"The privilege of the writ of *habeas corpus* shall not be suspended unless when in cases of rebellion or invasion the public safety may require it."

The terms of this provision necessarily imply judicial action. In England, all the higher courts were open to ap-

---

* 15 Stat. at Large, 44.          † 14 Id. 385.

‡ 3 British Stat. at Large, 397 ; 3 Hallam's Constitutional History, 19.

§ 3 Commentary, 135.

plicants for the writ, and it is hardly supposable that, under the new government, founded on more liberal ideas and principles, any court would be, intentionally, closed to them.

We find, accordingly, that the first Congress under the Constitution, after defining, by various sections of the act of September 24, 1789, the jurisdiction of the District Courts, the Circuit Courts, and the Supreme Court in other cases, proceeded, in the 14th section, to enact, "that all the before-mentioned courts of the United States shall have power to issue writs of *scire facias, habeas corpus,* and all other writs, not specially provided by statute, which may be necessary for the exercise of their respective jurisdictions; and agreeable to the principles and usages of law."* In the same section, it was further provided. "that either of the Justices of the Supreme Court, as well as Judges of the District Courts, shall have power to grant writs of *habeas corpus* for the purpose of an inquiry into the cause of commitment; provided that writs of *habeas corpus* shall in no case extend to prisoners in jail, unless they are in custody, under, or by color of the authority of the United States, or are committed for trial before some court of the same, or are necessary to be brought into court to testify."

That this court is one of the courts to which the power to issue writs of *habeas corpus* is expressly given by the terms of this section has never been questioned. It would have been, indeed, a remarkable anomaly if this court, ordained by the Constitution for the exercise, in the United States, of the most important powers in civil cases of all the highest courts of England, had been denied, under a constitution which absolutely prohibits the suspension of the writ, except under extraordinary exigencies, that power in cases of alleged unlawful restraint, which the Habeas Corpus Act of Charles II expressly declares those courts to possess.

But the power vested in this court is, in an important particular, unlike that possessed by the English courts. The jurisdiction of this court is conferred by the Constitution,

---

* 1 Stat. at Large, 81.

and is appellate; whereas, that of the English courts, though declared and defined by statutes, is derived from the common law, and is original.

The judicial power of the United States extends to all cases in law and equity arising under the Constitution, the laws of the United States, and treaties made under their authority, and to large classes of cases determined by the character of the parties, or the nature of the controversy.

That part of this judicial power vested in this court is defined by the Constitution in these words:

"In all cases affecting ambassadors, other public ministers, and consuls, and those in which a State shall be a party, the Supreme Court shall have original jurisdiction. In all the other cases before mentioned, the Supreme Court shall have appellate jurisdiction, both as to law and fact, with such exceptions, and under such regulations as the Congress shall make."

If the question were a new one, it would, perhaps, deserve inquiry whether Congress might not, under the power to make exceptions from this appellate jurisdiction, extend the original jurisdiction to other cases than those expressly enumerated in the Constitution; and especially, in view of the constitutional guaranty of the writ of *habeas corpus*, to cases arising upon petition for that writ.

But, in the case of *Marbury* v. *Madison*,\* it was determined, upon full consideration, that the power to issue writs of mandamus, given to this court by the 13th section of the Judiciary Act, is, under the Constitution, an appellate jurisdiction, to be exercised only in the revision of judicial decisions. And this judgment has ever since been accepted as fixing the construction of this part of the Constitution.

It was pronounced in 1803. In 1807 the same construction was given to the provision of the 14th section relating to the writ of *habeas corpus*, in the case of *Bollman and Swartwout*.†

The power to issue the writ had been previously exercised

---

in *Hamilton's case** (1795), and in *Burford's case*† (1806), in neither of which cases does the distinction between appellate and original jurisdiction appear to have been made.

In the case of *Bollman and Swartwout*, however, the point was brought distinctly before the court; the nature of the jurisdiction was carefully examined, and it was declared to be appellate. The question then determined has not since been drawn into controversy.

The doctrine of the Constitution and of the cases thus far may be summed up in these propositions:

(1.) The original jurisdiction of this court cannot be extended by Congress to any other cases than those expressly defined by the Constitution.

(2.) The appellate jurisdiction of this court, conferred by the Constitution, extends to all other cases within the judicial power of the United States.

(3.) This appellate jurisdiction is subject to such exceptions, and must be exercised under such regulations as Congress, in the exercise of its discretion, has made or may see fit to make.

(4.) Congress not only has not excepted writs of *habeas corpus* and *mandamus* from this appellate jurisdiction, but has expressly provided for the exercise of this jurisdiction by means of these writs.

We come, then, to consider the first great question made in the case now before us.

We shall assume, upon the authority of the decisions referred to, what we should hold were the question now for the first time presented to us, that in a proper case this court, under the act of 1789, and under all the subsequent acts, giving jurisdiction in cases of *habeas corpus*, may, in the exercise of its appellate power, revise the decisions of inferior courts of the United States, and relieve from unlawful imprisonment authorized by them, except in cases within some limitations of the jurisdiction by Congress.

It remains to inquire whether the case before us is a

* 3 Dallas 17.                          † 3 Cranch, 448.

proper one for such interposition. Is it within any such limitation? In other words, can this court inquire into the lawfulness of detention, and relieve from it if found unlawful, when the detention complained of is not by civil authority under a commitment made by an inferior court, but by military officers, for trial before a military tribunal, after an examination into the cause of detention by the inferior court, resulting in an order remanding the prisoner to custody?

It was insisted in argument that, " to bring a case within the appellate jurisdiction of this court in the sense requisite to enable it to award the writ of *habeas corpus* under the Judiciary Act, it is necessary that the commitment should appear to have been by a tribunal whose decisions are subject to revision by this court."

This proposition seems to assert, not only that the decision to be revised upon *habeas corpus* must have been made by a court of the United States, subject to the ordinary appellate jurisdiction of this court, but that having been so made, it must have resulted in an order of commitment to civil authority subject to the control of the court making it.

The first branch of this proposition has certainly some support in *Metzger's case*,* in which it was held that an order of commitment made by a district judge at chambers cannot be revised here by *habeas corpus*. This case, as was observed by Mr. Justice Nelson in *Kaine's case*,† stands alone; and it may admit of question whether it can be entirely reconciled with the proposition, which we regard as established upon principle and authority, that the appellate jurisdiction by *habeas corpus* extends to all cases of commitment by the judicial authority of the United States, not within any exception made by Congress.

But it is unnecessary to enter upon this inquiry here. The action which we are asked to revise was that of a tribunal whose decisions are subject to revision by this court in ordinary modes.

---

* 5 Howard, 176.          † 14 Ib. 108.

We need consider, therefore, only the second branch of the proposition, namely, that the action of the inferior court must have resulted in a commitment for trial in a civil court; and the inference drawn from it, that no relief can be had here, by *habeas corpus*, from imprisonment under military authority, to which the petitioner may have been remanded by such a court.

This proposition certainly is not supported by authority.

In *Kaine's case* all the judges, except one, asserted, directly or indirectly, the jurisdiction of this court to give relief in *a case* where the detention was by order of a United States commissioner. The lawfulness of the detention had been examined by the Circuit Court for the Southern District of New York upon a writ of *habeas corpus*, and that court had dismissed the writ and remanded the prisoner to custody. In this court relief was denied on the merits, but the jurisdiction was questioned by one judge only. And it is difficult to find any substantial ground upon which jurisdiction in that case can be affirmed, and in this denied.

In *Wells's case,*\* the petitioner was confined in the penitentiary, under a sentence of death, commuted by the President into a sentence of imprisonment for life. He obtained a writ of *habeas corpus* from the Circuit Court of the District of Columbia, was brought before that court, and was remanded to custody. He then sued out a writ of *habeas corpus* from this court, and his case was fully considered here. No objection was taken to the jurisdiction, though there, as here, it was evident that the actual imprisonment, at the time of the petition for the writ, was not under the direction of the court by whose order the prisoner was remanded, but by a different and distinct authority.

In this case of *Wells*, Mr. Justice Curtis again dissented, and, on the point of jurisdiction, Mr. Justice Campbell concurred with him. The other judges, though all, except one, were of opinion that the relief asked must be denied, agreed in maintaining the jurisdiction of the court. Judge Curtis,

---

\* 18 Howard, 308.

who regarded the question as left undetermined in *Kaine's case*, admitted that the jurisdiction was asserted in this, and stated the ground of judgment affirming jurisdiction to be that, "as the Circuit Court had had the prisoner before it, and has remanded him, this court, by a writ of *habeas corpus*, may examine that decision and see whether it be erroneous or not."

Since this judgment was pronounced, the jurisdiction, in cases similar to that now before the court, has not hitherto been questioned.

We have carefully considered the argument against it, made in this case, and are satisfied that the doctrine heretofore maintained is sound.

The great and leading intent of the Constitution and the law must be kept constantly in view upon the examination of every question of construction.

That intent, in respect to the writ of *habeas corpus*, is manifest. It is that every citizen may be protected by judicial action from unlawful imprisonment. To this end the act of 1789 provided that every court of the United States should have power to issue the writ. The jurisdiction thus given in law to the Circuit and District Courts is original; that given by the Constitution and the law to this court is appellate. Given in general terms, it must necessarily extend to all cases to which the judicial power of the United States extends, other than those expressly excepted from it.

As limited by the act of 1789, it did not extend to cases of imprisonment after conviction, under sentences of competent tribunals; nor to prisoners in jail, unless in custody under or by color of the authority of the United States, or committed for trial before some court of the United States, or required to be brought into court to testify. But this limitation has been gradually narrowed, and the benefits of the writ have been extended, first in 1833,* to prisoners confined under any authority, whether State or National, for any act done or omitted in pursuance of a law of the United

---

* 4 Stat. at Large, 634.

States, or of any order, process, or decree of any judge or court of the United States; then in 1842* to prisoners being subjects or citizens of foreign States, in custody under National or State authority for acts done or omitted by or under color of foreign authority, and alleged to be valid under the law of nations; and finally, in 1867,† to all cases where any person may be restrained of liberty in violation of the Constitution, or of any treaty or law of the United States.

This brief statement shows how the general spirit and genius of our institutions has tended to the widening and enlarging of the *habeas corpus* jurisdiction of the courts and judges of the United States; and this tendency, except in one recent instance, has been constant and uniform; and it is in the light of it that we must determine the true meaning of the Constitution and the law in respect to the appellate jurisdiction of this court. We are not at liberty to except from it any cases not plainly excepted by law; and we think it sufficiently appears from what has been said that no exception to this jurisdiction embraces such a case as that now before the court. On the contrary, the case is one of those expressly declared not to be excepted from the general grant of jurisdiction. For it is a case of imprisonment alleged to be unlawful, and to be under color of authority of the United States.

It seems to be a necessary consequence that if the appellate jurisdiction of *habeas corpus* extends to any case, it extends to this. It is unimportant in what custody the prisoner may be, if it is a custody to which he has been remanded by the order of an inferior court of the United States. It is proper to add, that we are not aware of anything in any act of Congress, except the act of 1868, which indicates any intention to withhold appellate jurisdiction in *habeas corpus* cases from this court, or to abridge the jurisdiction derived from the Constitution and defined by the act of 1789. We agree that it is given subject to exception and regulation by Congress; but it is too plain for argument that the denial

---

* 5 Stat. at Large, 539.       † 14 Id. 385.

to this court of appellate jurisdiction in this class of cases must greatly weaken the efficacy of the writ, deprive the citizen in many cases of its benefits, and seriously hinder the establishment of that uniformity in deciding upon questions of personal rights which can only be attained through appellate jurisdiction, exercised upon the decisions of courts of original jurisdiction. In the particular class of cases, of which that before the court is an example, when the custody to which the prisoner is remanded is that of some authority other than that of the remanding court, it is evident that the imprisoned citizen, however unlawful his imprisonment may be in fact, is wholly without remedy, unless it be found in the appellate jurisdiction of this court.

These considerations forbid any construction giving to doubtful words the effect of withholding or abridging this jurisdiction. They would strongly persuade against the denial of the jurisdiction even were the reasons for affirming it less cogent than they are.

We are obliged to hold, therefore, that in all cases where a Circuit Court of the United States has, in the exercise of its original jurisdiction, caused a prisoner to be brought before it, and has, after inquiring into the cause of detention, remanded him to the custody from which he was taken, this court, in the exercise of its appellate jurisdiction, may, by the writ of *habeas corpus*, aided by the writ of *certiorari*, revise the decision of the Circuit Court, and if it be found unwarranted by law, relieve the prisoner from the unlawful restraint to which he has been remanded.

This conclusion brings us to the inquiry whether the 2d section of the act of March 27th, 1868, takes away or affects the appellate jurisdiction of this court under the Constitution and the acts of Congress prior to 1867.

In *McCurdle's case*,* we expressed the opinion that it does not, and we have now re-examined the grounds of that opinion.

The circumstances under which the act of 1868 was passed were peculiar.

---

* 7 Wallace, 508.

On the 5th of February, 1867, Congress passed the act to which reference has already been made, extending the original jurisdiction by *habeas corpus* of the District and Circuit Courts, and of the several judges of these courts, to all cases of restraint of liberty in violation of the Constitution, treaties, or laws of the United States. This act authorized appeals to this court from judgments of the Circuit Court, but did not repeal any previous act conferring jurisdiction by *habeas corpus*, unless by implication.

Under this act, one McCardle, alleging unlawful restraint by military force, petitioned the Circuit Court for the Southern District of Mississippi for the writ of *habeas corpus*. The writ was issued, and a return was made; and, upon hearing, the court decided that the restraint was lawful, and remanded him to custody. McCardle prayed an appeal, under the act, to this court, which was allowed and perfected. A motion to dismiss the appeal was made here and denied. The case was then argued at the bar, and the argument having been concluded on the 9th of March, 1869, was taken under advisement by the court. While the cause was thus held, and before the court had time to consider the decision proper to be made, the repealing act under consideration was introduced into Congress. It was carried through both houses, sent to the President, returned with his objections, repassed by the constitutional majority in each house, and became a law on the 27th of March, within eighteen days after the conclusion of the argument.

The effect of the act was to oust the court of its jurisdiction of the particular case then before it on appeal, and it is not to be doubted that such was the effect intended. Nor will it be questioned that legislation of this character is unusual and hardly to be justified except upon some imperious public exigency.

It was, doubtless, within the constitutional discretion of Congress to determine whether such an exigency existed; but it is not to be presumed that an act, passed under such circumstances, was intended to have any further effect than that plainly apparent from its terms.

It is quite clear that the words of the act reach, not only all appeals pending, but all future appeals to this court under the act of 1867; but they appear to be limited to appeals taken under that act.

The words of the repealing section are, "that so *much* of the act approved February 5th, 1867, as *authorizes* an appeal from the judgment of the Circuit Court to the Supreme Court of the United States, or the exercise of any such jurisdiction by said Supreme Court on appeals which have been, or may be hereafter taken, be, and the same is hereby repealed."

These words are not of doubtful interpretation. They repeal only so much of the act of 1867 as authorized appeals, or the exercise of appellate jurisdiction by this court. They affected only appeals and appellate jurisdiction authorized by that act. They do not purport to touch the appellate jurisdiction conferred by the Constitution, or to except from it any cases not excepted by the act of 1789. They reach no act except the act of 1867.

It has been suggested, however, that the act of 1789, so far as it provided for the issuing of writs of *habeas corpus* by this court, was already repealed by the act of 1867. We have already observed that there are no repealing words in the act of 1867. If it repealed the act of 1789, it did so by implication, and any implication which would give to it this effect upon the act of 1789, would give it the same effect upon the acts of 1833 and 1842. If one was repealed, all were repealed.

Repeals by implication are not favored. They are seldom admitted except on the ground of repugnancy; and never, we think, when the former act can stand together with the new act. It is true that exercise of appellate jurisdiction, under the act of 1789, was less convenient than under the act of 1867, but the provision of a new and more convenient mode of its exercise does not necessarily take away the old; and that this effect was not intended is indicated by the fact that the authority conferred by the new act is expressly declared to be "in addition" to the authority conferred by the former acts. Addition is not substitution.

The appeal given by the act of 1867 extended, indeed, to cases within the former acts; and the act, by its grant of additional authority, so enlarged the jurisdiction by *habeas corpus* that it seems, as was observed in the McCardle case, "impossible to widen" it. But this effect does not take from the act its character of an additional grant of jurisdiction, and make it operate as a repeal of jurisdiction theretofore allowed.

Our conclusion is, that none of the acts prior to 1867, authorizing this court to exercise appellate jurisdiction by means of the writ of *habeas corpus*, were repealed by the act of that year, and that the repealing section of the act of 1868 is limited in terms, and must be limited in effect to the appellate jurisdiction authorized by the act of 1867.

We could come to no other conclusion without holding that the whole appellate jurisdiction of this court, in cases of *habeas corpus*, conferred by the Constitution, recognized by law, and exercised from the foundation of the government hitherto, has been taken away, without the expression of such intent, and by mere implication, through the operation of the acts of 1867 and 1868.

The suggestion made at the bar, that the provision of the act of 1789, relating to the jurisdiction of this court by *habeas corpus*, if repealed by the effect of the act of 1867, was revived by the repeal of the repealing act, has not escaped our consideration. We are inclined to think that such would be the effect of the act of 1868, but having come to the conclusion that the act of 1789 was not repealed by the act of 1867, it is not necessary to express an opinion on that point.

The argument having been confined, by direction of the court, to the question of jurisdiction, this opinion is limited to that question. The jurisdiction of the court to issue the writ prayed for is affirmed.