Kendrick **BILLETT,** Petitioner,

v.

Janet **RENO,** Attorney General of the United States; Doris Meissner, as Commissioner of the Immigration and Naturalization Service; John Ingham, District Director, Immigration and Naturalization Service; and the Immigration and Naturalization Service, Respondents.

No. 97–CV–6399T.

United States District Court, W.D. New York.

April 15, 1998.

Michael B. Berger, Williamsville, NY, for Petitioner.

James W. Grable, Special Assistant U.S. Attorney, Immigration & Naturalization Service, Buffalo, NY, for Respondents.

## DECISION and ORDER

TELESCA, District Judge.

### INTRODUCTION

Kendrick Billett, the petitioner, who is subject to deportation, petitions for a writ of habeas corpus, and seeks a court ruling that he is entitled to a hearing determining whether or not he should receive a waiver from deportation because of humanitarian factors. The Government contends: (1) that this Court has no jurisdiction to consider this issue and (2) that the petitioner has no entitlement to a hardship waiver hearing because of the retroactive application of § 440(d) of the Anti–Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). For the reasons set forth below, I find that this Court has habeas corpus jurisdiction and that the petitioner is entitled to the hearing he seeks.

### BACKGROUND

#### I.  Factual Background

Petitioner Kendrick Billett, ("Billett"), was eight years old when he emigrated with his family from Great Britain to the United States in 1977. Twelve years later, on September 6, 1989, he was convicted of attempted criminal sale of a controlled substance (cocaine) in the third degree. In 1992, petitioner was again arrested for a controlled substance violation.

Because of his second felony arrest, the INS initiated deportation proceedings against Billett on October 21, 1992. A deportation hearing was scheduled for June 23, 1993, but Billett was unable to attend because he was still under detention for his 1992 arrest. As a result, the deportation proceedings were administratively closed by the hearing judge.

On September 24, 1993, Billett was convicted of attempted criminal sale of a controlled substance. Since this was his second felony conviction, the INS initiated superseding deportation proceedings based on his status as an aggravated felon. Billett's deportation hearing took place on June 25, 1996 during which, he requested a hardship waiver of extradition to prevent his deportation. The hearing judge refused to consider Billett's request concluding that AEDPA § 440(d) eliminated the petitioner's right to request a hardship waiver. In doing so, the hearing judge applied the amendment of § 440(d) retroactively.

Petitioner was found to be deportable and on April 4, 1997, he appealed that determination to the Second Circuit Court of Appeals, which dismissed his appeal on July, 25, 1997, as untimely. On August 8, 1997, petitioner was ordered to present himself on September 11, 1997, for deportation. On September 9, 1997, petitioner filed this application for a writ of habeas corpus. The INS has stayed its order of deportation pending resolution of this case.

### II.  Statutory Background

#### A.  Jurisdiction over Immigration Proceedings

Traditionally, a person aggrieved by an Immigration Service deportation decision could appeal directly to the Circuit Court of Appeals. Additionally, an alien in the custody of the INS could challenge his detention in a habeas corpus brought in district court. The Government argues that these procedures have been dramatically altered in recent years by the enactment of AEDPA in 1996 and the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. Law No. 104–208, Division C, 110 Stat. 3009 (1996). An examination of the history and current status of federal court jurisdiction over immigration proceedings is necessary in order to determine the applicability of the congressional amendments to the facts of this case.

#### 1.  Historical Jurisdictional Provisions

#### a.  Appellate Jurisdiction

From 1961 to 1996, an alien who was found to be deportable by the INS could appeal such a determination to the Court of Appeals for the Circuit in which the alien resided, or where the administrative proceedings took place. 8 U.S.C.A. § 1105a(a)(2) (West 1970) (repealed 1996). Courts of appeals had exclusive jurisdiction over such appeals, but could remand cases to district courts for determination of factual issues, such as an

alien's nationality. 8 U.S.C.A. § 1105a(a)(5) (West 1970) (repealed 1996).

### b. *Habeas Corpus Jurisdiction*

From 1961 to 1996, an alien could obtain judicial review of a deportation order by filing a habeas corpus petition in district court. 8 U.S.C.A. § 1105a(9) (West 1970)(repealed 1996).

Alternatively, an alien subject to deportation order could petition for habeas corpus relief pursuant to 28 U.S.C. § 2241. Historically, § 2241 conferred general authority upon district courts to hear habeas corpus petitions. It has also been held to be recognized as a valid jurisdictional exercise of habeas corpus authority to hear petitions relating to Immigration Service decisions. *See Mojica v. Reno,* 970 F.Supp. 130, 162 (E.D.N.Y.1997) (noting that three Courts of Appeals have found that § 2241 provided an independent basis of jurisdiction to hear immigration habeas corpus petitions).

### 2. *The Antiterrorism and Effective Death Penalty Act of 1996.*

### a. *Appellate Jurisdiction*

In 1996, the Antiterrorism and Effective Death Penalty Act, eliminated direct review by any court of any *final* order of deportation against an alien who had committed specified crimes, including certain drug offenses. Pub. Law No. 104–132, 110 Stat. 1214, 1276–77 (1996). While the AEDPA allowed some aliens to appeal from deportation orders, it precluded aliens who had been convicted of drug crimes or violent felonies from seeking an appeal of a deportation order.

### b. *Habeas Corpus Jurisdiction*

Section 401(e) of the AEDPA, entitled "Elimination of Custody Review by Habeas Corpus," repealed 8 U.S.C. § 1105a(a)(9), which had previously granted specific authority to district courts to hear habeas corpus petitions brought by aliens challenging their custody. Although Section 401(e) repealed § 1105a(a)(9), it did not address jurisdiction of a district court to hear immigration matters pursuant to 28 U.S.C. § 2241, the general al habeas corpus provision. Nor has § 2241 been amended to limit a district court's jurisdiction to hear petitions brought by aliens seeking review of a deportation order adversely affecting their status.

### 3. *Current Jurisdictional Provisions— The Illegal Immigration Reform and Immigrant Responsibility Act of 1996*

Five months after the AEDPA became effective, Congress again amended the laws relating to judicial review of immigration decisions by enacting the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. Law No. 104–208, Division C, 110 Stat. 3009 (1996). The IIRIRA, which was passed in September of 1996, and became effective on April 1, 1997, provided two sets of rules relating to judicial review of deportation orders. First, the "transitional rules," applied to aliens who were subject to deportation hearings prior to April 1, 1997, but who had *not* received a final order of deportation until *after* October 30, 1996. The remaining set of rules, the "permanent rules," applied to deportation hearings commencing after April 1, 1997, the effective date of the Act. Because Billett was subject to deportation proceedings prior to April 1, 1997, and had not received his final deportation order until after October 30, 1996, the transitional rules apply in this case.

### a. *Appellate Jurisdiction*

The transitional rules provide in relevant part that a person who is found to be "deportable by reason of having committed a criminal offense covered in [specified sections] of the Immigration and Nationality Act, [ ] ("INA")," shall not have the right to appeal his or her deportation decision. IIRIRA § 309(c)(4)(G) [1]. Among the crimes listed in the INA that trigger the "no-appeal" provisions of the IIRIRA are the drug offenses of which petitioner was convicted.

### b. *Habeas Corpus Jurisdiction*

The permanent rules of the IIRIRA modified the AEDPA's prohibition on habeas corpus review of deportation orders by allowing

---

**1.** This portion of the IIRIRA is not codified in the United States Code.

habeas corpus review in certain limited instances. The IIRIRA limits habeas corpus review to determinations of whether or not the petitioner is an alien, whether or not the petitioner was ordered removed, and whether the alien can prove that he is a lawfully admitted permanent resident of the United States. 8 U.S.C. § 1252(e)(2).

The transitional rules of the IIRIRA, applicable in this case, however, are silent with respect to whether or not a district court has habeas corpus jurisdiction over aliens who are in the custody of the INS. But neither the transitional rules or the permanent provisions of the IIRIRA specifically amend the habeas corpus jurisdiction of the district courts under 28 U.S.C. § 2241. The Supreme Court explicitly admonished that congressional intent to repeal habeas jurisdiction must express and that "[r]epeals by implication are not favored, *Felker v. Turpin,* 518 U.S. 651, 116 S.Ct. 2333, 2338, 135 L.Ed.2d 827 (1996), *see also, Ex Parte Yerger,* 75 U.S. (8 Wall.) 85, 19 L.Ed. 332 (1868)" cited in *Mojica, supra,* 970 F.Supp. 130, 159.

### B. *Requests for Waivers from Extradition Orders*

Prior to 1996, any permanent resident-alien subject to an order of deportation from the United States could apply for a waiver from deportation based on personal hardship, provided that he or she had lived in the United States for seven consecutive years. 8 U.S.C. § 1182(c) (Amended 1996). Whether or not such a hardship waiver would be granted was within the discretion of the INS, and was not reviewable in a habeas corpus proceeding. However, on April 24, 1996, during the pendency of Billett's deportation proceedings, but prior to the issuance of a final deportation order, the AEDPA amended 8 U.S.C. § 1182(c) to prohibit persons convicted of one or more violations relating to a controlled substance from even requesting a hardship waiver. 8 U.S.C.A. § 1182(a)(2) (West Supp.1997).

Congress did not make clear whether the new provision eliminating hardship waivers was intended to apply retroactively to pending immigration proceedings, or only to proceedings commenced after the effective date of the AEDPA. The AEDPA left unresolved the issue of whether drug-related criminal convictions obtained prior to the effective date of the law would prohibit the requesting of a hardship waiver. Despite this uncertainty, the hearing judge in this case determined that new provision § 1182(a) applied to immigration proceedings pending at the time the AEDPA became effective and, therefore, prevented petitioner from requesting a hardship waiver. The Attorney General came to the same conclusion in the *Matter of Soriano,* Interim Dec. 3289 (A.G., Feb. 21, 1997), in which she held that § 1182(a) applied retroactively to preclude aliens convicted of drug offenses from requesting hardship waivers.

### *DISCUSSION*

#### I. *Jurisdiction*

The determination of whether or not a district court has jurisdiction over a habeas corpus petition brought by an alien subject to deportation challenging the denial of his or her opportunity to request a hardship waiver was complicated by the enactment of the AEDPA and IIRIRA. Faced with the same questions, district courts in this Circuit have split as to whether or not district courts have habeas jurisdiction over immigration proceedings. Two district courts have found that district courts do have jurisdiction over habeas petitions brought by aliens challenging the denial of their opportunity to request a waiver, *Yesil v. Reno,* 973 F.Supp. 372 (S.D.N.Y.1997); *Mojica v. Reno,* 970 F.Supp. 130 (E.D.N.Y.1997), while another court has found that there is no jurisdiction over such a claim. *Marriott v. Ingham,* 990 F.Supp. 209 (W.D.N.Y.1998) (Larimer, C.J.). Moreover, District Courts in Colorado, Michigan, Illinois, and Georgia, have held that district courts have habeas corpus jurisdiction over petitions which allege "substantial constitutional violations," or that a "fundamental miscarriage of justice has occurred." *See Jurado–Gutierrez v. Greene,* 977 F.Supp. 1089, 1091 (D.Colo.1997); *Powell v. Jennifer,* 937 F.Supp. 1245,1252–53 (E.D.Mich.1996); *Dunkley v. Perryman,* 1996 WL 464191 at *2, 3 (N.D.Ill.1996); *Mbiya v. INS,* 930 F.Supp. 609 (N.D.Ga.1996). However, a dis-

trict court in Florida has found that it lacks jurisdiction over habeas petitions brought by aliens. *Mayers v. Reno,* 977 F.Supp. 1457 (S.D.Fla.1997).

Emblematic of the confusion surrounding this issue are the opposite results reached by two different courts in deciding the same issue in the same case. *Ozoanya v. Reno,* 979 F.Supp. 447 (W.D.La.1997). In that case, the District Court for the District of Columbia, (where the petition was originally filed), held that the district court had jurisdiction over the alien petitioner's habeas corpus claim. *Ozoanya v. Reno,* 968 F.Supp. 1, 7 (D.D.C.1997). However, that court determined that venue was improper, and transferred the case to the Western District of Louisiana. The Louisiana district court then held that a district court is *without* jurisdiction to hear petitioner's claims, and accordingly dismissed the case. *Ozoanya v. Reno,* 979 F.Supp. 447 (D.La.1997).

However, with respect to the issue of jurisdiction, I find that the reasoning of the *Mojica, Yesil,* and *Jurado–Gutierrez* courts, which held that district court's do have jurisdiction over claims such as the one brought in this case, is persuasive. In *Mojica,* Judge Weinstein employed a rigorous and detailed analysis of the issues involved in determining whether or not the court had jurisdiction. Judge Weinstein held that the AEDPA's repeal of habeas corpus jurisdiction pursuant to the INA did not divest the court of its authority to hear habeas corpus petitions under 28 U.S.C. § 2241, the general habeas corpus statute. Judge Weinstein noted that neither the AEDPA nor the IIRIRA implicated 28 U.S.C. § 2241, and accordingly, under settled rules of statutory construction, neither Act could be read as limiting the court's jurisdiction conferred under § 2241. *Mojica,* 970 F.Supp. at 159.

■ I agree with the *Mojica* court and hold that the amendments to the Immigration and Naturalization Act do not limit this court's habeas corpus jurisdiction under § 2241. As recently as 1996, the Supreme Court has reiterated its position stated over 100 years ago in *Ex Parte Yerger,* that "[r]epeals [of habeas corpus jurisdiction] by implication are not favored." *Felker v. Turpin,*

518 U.S. 651, 116 S.Ct. 2333, 2338, 135 L.Ed.2d 827 (1996)(citing *Ex Parte Yerger,* 75 U.S. (8 Wall.) 85, 19 L.Ed. 332 (1868). While the AEDPA and IIRIRA undoubtedly limit habeas corpus jurisdiction over immigration appeals pursuant to the provisions of the Immigration and Naturalization Act, it would be an improper exercise of judicial authority to surmise that Congress also intended to limit habeas corpus jurisdiction pursuant to § 2241. As Judge Weinstein noted, "Congress is expert in the process of law-making. Had it desired to repeal Section 2241, or render it inapplicable to challenges to deportation orders, it would have taken the necessary steps to do so." *Mojica* 970 F.Supp. at 160. Since Congress has not amended or repealed a district court's jurisdiction under § 2241, I find that jurisdiction over this petition is proper, and therefore deny defendant's motion to dismiss for lack of jurisdiction.

## II. *Request for a Waiver*

■ Courts have also disagreed as to whether or not the AEDPA may be applied retroactively to prevent an alien convicted of a drug felony from applying for a hardship waiver during a deportation hearing where the proceedings were commenced *prior* to the effective date of the AEDPA, but the hearing was held *after* the effective date. *See Mojica,* 970 F.Supp. at 168–82 (holding that § 440(d) of the AEDPA does not apply retroactively to aliens whose deportations were initiated prior to April 24, 1996 and were completed after that date); *Powell,* 937 F.Supp. at 1259–61 (holding that § 440(d) of the AEDPA foreclosed right of alien whose proceeding were pending on April 24, 1996 to request a discretionary hardship waiver). I find that retroactive application of § 440(d) is improper, and hold that petitioner may not be denied the opportunity to request a waiver from deportation pursuant to 8 U.S.C. § 1182.

In *Landgraf v. USI Film Products,* 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994), the Supreme Court set forth a three-part test for determining whether or not the retroactive application of a statute would be unconstitutional. The first step requires a

determination of whether or not Congress expressly provided the statute to be applied retroactively. Absent a clear expression, the court must then determine whether or not the statute has retroactive effect, that is, whether or not "it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Landgraf,* 511 U.S. at 280. Finally, if the court determines that the statute does have retroactive effect, it must determine whether or not Congress intended such a result. In the absence of clear congressional intent that the statute be applied retroactively, a presumption against retroactivity controls and the statute will be considered to apply prospectively. *Landgraf,* 511 U.S. at 280. Applying the three-part *Landgraf* test, I find that retroactive application of § 440(d) is improper.

Unlike other sections of the AEDPA which specifically stated whether or not they were to be applied prospectively or retroactively, § 440(d) contains no such provision. Accordingly, under *Landgraf,* it is necessary to determine whether or not the statute nonetheless has retroactive effect.

A statute has retroactive effect when, *inter alia,* "it impair[s] rights a party possessed when he acted, increase[s] a party's liability for past conduct, or impose[s] new duties with respect to transactions already completed." *Landgraf,* 511 U.S. at 280. In the instant case, application of § 440(d) has retroactive effect because it impairs rights which the petitioner possessed when he acted. Specifically, it impairs the right of petitioner to request a waiver from deportation despite the fact that he enjoyed such a right at the time he was convicted. Accordingly, I find that § 440(d) has a retroactive effect.

I find that Congress has not expressed an intention that § 440(d) be applied retroactively, and accordingly, determine that this law may only be applied prospectively. In enacting the AEDPA, Congress specified that certain limited sections of the Act were to be applied retroactively, and was silent with respect to the remaining sections. Congress was careful in determining which of the provisions were to apply retroactively—and

§ 440(d) clearly was not one of them. As Judge Weinstein observed, "[w]here [Congress] agrees upon and purposely enacts provisions explicitly meant to have retroactive effect, [it] has no trouble finding the words to do so." *Mojica,* 970 F.Supp. at 172; *See also, Touche Ross & Co. v. Redington,* 442 U.S. 560, 571, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979) (noting that "when Congress wished to provide [for retroactive application], it knew how to do so expressly.").

In the instant case, Congress chose to remain silent as to wether or not § 440(d) should be applied retroactively. *Mojica,* 970 F.Supp. at 172. I therefore find that under *Landgraf,* the presumption against retroactive application of a statute applies, and § 440(d) of the AEDPA may not be applied retroactively to preclude petitioner from seeking a hardship waiver from extradition.

*CONCLUSION*

I find that this Court has jurisdiction to entertain petitioner's application for a writ of habeas corpus, and that petitioner is entitled to request a hardship waiver from deportation. Section 440(d) of the AEDPA, which bars legal permanent residents who have been convicted of certain crimes from seeking a discretionary waiver of deportation, may not be applied retroactively to the petitioner.

This Court has subject matter jurisdiction over the matters set forth in the petition and has the power to issue a writ of habeas corpus on behalf of the petitioner pursuant to § 2241. This case is remanded back to the INS for determination of petitioner's eligibility for hardship waiver from deportation in accordance with this decision.

ALL OF THE ABOVE IS SO ORDERED.