

2000 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-9-2000

# Liang v. INS

Precedential or Non-Precedential:

Docket 99-5053

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2000

Recommended Citation

"Liang v. INS" (2000). *2000 Decisions.* Paper 48.
http://digitalcommons.law.villanova.edu/thirdcircuit_2000/48

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2000 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed March 9, 2000

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 99-5053

XU CHENG LIANG,
        Petitioner

v.

IMMIGRATION & NATURALIZATION SERVICE,
        Respondent

Petition for Review of a Decision
of the Immigration & Naturalization Service
(A40 278 218)

No. 99-5327

GIOACCHINO CINQUEMANI,
        Petitioner

v.

IMMIGRATION & NATURALIZATION SERVICE,
        Respondent

Petition for Review of a Decision
of the Immigration & Naturalization Service
(A35 098 342)

No. 99-6039

CARMELO JOSE RODRIGUEZ,
        Petitioner

v.

IMMIGRATION & NATURALIZATION SERVICE,
        Respondent

Petition for Review of a Decision
of the Immigration & Naturalization Service
(A38 502 331)

Argued December 20, 1999

Before: SLOVITER, ROTH and COWEN, Circuit Judg es

(Filed March 9, 2000)

Theodore N. Cox
New York, NY 10013

 Counsel for Petitioner
Xu Cheng Liang, No. 99-5053

Martin A. Kascavage
Schoener & Kascavage
Philadelphia, PA 19106

 Counsel for Petitioner
Gioacchino Cinquemani,
No. 99-5327

2

Kerry William Bretz
Alan Michael Straus (Argued)
Matthew L. Guadagno
Bretz & Coven
New York, NY 10007

 Counsel for Petitioner
Carmelo Jose Rodriguez,
No 99-6039

Christopher C. Fuller
Alison M. Igoe (Argued)
Michael P. Lindemann
John M. McAdams, Jr.
David W. Ogden
Terri J. Scadron
John D. Williams
United States Department of Justice
Office of Immigration Litigation
Washington, DC 20044

 Counsel for Respondent INS

Lee Gelernt (Argued)
Lucas Guttentag
American Civil Liberties Union
 Foundation
New York, NY 10004-2400

 Counsel for Amicus
American Civil Liberties Union
Foundation

Jeffrey Heller
Brooklyn Law School

Counsel for Amici
Law Professors

Michael J. Wishnie
Washington Square Legal
 Services, Inc.
New York, NY 10012

 Counsel for Amicus
Citizens and Immigrants for
Equal Justice

                              3

OPINION OF THE COURT

SLOVITER, Circuit Judge.

I.

INTRODUCTION

In several opinions handed down in the last two years,
this court has had occasion to consider the effect of various
provisions of the Antiterrorism and Effective Death Penalty
Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214
(1996), and the Illegal Immigration Reform and Immigrant
Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104-208,
110 Stat. 3009-546 (1996), on the jurisdiction of the federal
courts over issues raised by aliens with respect to
deportation proceedings commenced by the Immigration
and Naturalization Service ("INS"). Judicial review of cases
in which the INS commenced deportation proceedings
against the alien prior to April 1, 1997 is governed by the
transitional rules of IIRIRA, whereas judicial review of those
commenced thereafter are governed by the permanent
judicial review amendments of IIRIRA ("permanent rules").

The three cases before us today arise under the
permanent rules, which we have not previously interpreted.
In particular, they require us to decide whether this court
has jurisdiction over a petition for review filed by an alien
who has been ordered deported because s/he has been
convicted of one or more crimes specified in the
Immigration and Nationality Act ("INA") (hereafter referred
to as an alien with a criminal conviction).1 As a necessary
component of that decision we must also decide whether
_____

1. We use the term "alien with a criminal conviction" to refer to an alien
who has been convicted of one or more crimes listed in INA

S 242(a)(2)(C), AEDPA S 440(a), or transitional rule IIRIRA S 309(c)(4)(G).

The covered crimes include aggravated felonies, controlled substance convictions, certain firearm offenses, miscellaneous national security or defense crimes, or two convictions for crimes involving moral turpitude.

the permanent judicial review amendments of IIRIRA divest the federal courts of their habeas corpus jurisdiction under 28 U.S.C. S 2241.

In our earlier decisions, we held that AEDPA and the transitional rules of IIRIRA deprived us of jurisdiction over a petition for review from a final order of removal entered against an alien convicted of certain crimes listed in the statutes, see Catney v. INS, 178 F.3d 190 (3d Cir. 1999); Morel v. INS, 144 F.3d 248 (3d Cir. 1998), but that the district courts retain jurisdiction under the general statutory grant of habeas corpus jurisdiction, 28 U.S.C. S 2241, to review statutory and constitutional challenges to the deportation order, see Sandoval v. Reno, 166 F.3d 225 (3d Cir. 1999); DeSousa v. Reno, 190 F.3d 175 (3d Cir. 1999).

In the cases currently before us, three permanent legal residents, Gioacchino Cinquemani, Carmelo Jose Rodriguez, and Xu Cheng Liang (collectively "petitioners"), have filed petitions for review challenging thefinal orders of removal entered against them by the Board of Immigration Appeals ("BIA"). Rodriguez has also filed a petition for a writ of habeas corpus in the district court of New Jersey, Rodriguez v. Reno, Civ. No. 99-4300, which is pending. The INS filed a motion to dismiss for lack of jurisdiction in each case before us. We directed that petitioners' cases be expedited and consolidated.2 The American Civil Liberties Union ("ACLU") filed an amicus brief on the jurisdictional issues, as did a group of twenty-six law professors. The Citizens and Immigrants for Equal Justice filed an amicus brief on the merits of petitioners' claims. We focus on the jurisdictional issue, as we cannot consider the merits of the petitioners' claims until that is resolved.

_____

2. A fourth case also consolidated with them arose under the transitional rules and was dismissed for lack of jurisdiction. Vergara-Hernandez v. INS, No. 98-3175 (3d Cir. Dec. 27, 1999) (unpublished memorandum opinion).

II.

BACKGROUND

Gioacchino Cinquemani, a native and citizen of Italy, entered the United States as a lawful permanent resident in 1975. He is married and has two United States citizen children. He pled guilty on December 4, 1997 in the United States District Court for the Eastern District of New York to conspiracy to engage in the business of dealing infirearms in violation of 18 U.S.C. S 371 and conspiracy to distribute and possess with intent to distribute heroin and morphine in violation of 21 U.S.C. SS 846 and 841(b)(1)(B), conduct which took place in 1994 and for which he was arrested in 1994. In March 1998, the INS issued an order to show cause why Cinquemani should not be deported based on the convictions.

Carmelo Jose Rodriguez, a native and citizen of the Dominican Republic, entered the United States as a lawful permanent resident in 1983. He also is married and has two United States citizen children. He pled guilty in 1993 in New Jersey state court to two counts of receiving stolen property and to one count of possession of cocaine, pled guilty in 1994 in Ohio state court to receiving stolen property, and pled guilty in 1995 in New Jersey state court to one count of receiving stolen property. He was released from prison for the latter crime on March 5, 1997. On July 1, 1997, the INS initiated removal proceedings against Rodriguez on the basis of his criminal convictions.

Xu Cheng Liang, a native and citizen of China, entered the United States as a lawful permanent resident in 1987. He also has two United States citizen children. He was allegedly convicted in 1989 in New York state court of attempted robbery in the second degree and in May 1997 in federal court of conspiracy to distribute heroin and of possession with intent to distribute heroin in violation of 21 U.S.C. S 846. On February 3, 1998, the INS instituted removal proceedings against Liang on the basis of his convictions.

At their immigration hearings, both Cinquemani and Rodriguez conceded that they were removable aliens based

6

on their criminal convictions, but argued that they should be permitted to seek waiver of deportability under former INA S 212(c). Rodriguez also requested the discretionary relief of cancellation of removal under new INAS 240A, 8 U.S.C. S 1229b, and adjustment of status in conjunction with waiver of inadmissibility under INA S 212(h), 8 U.S.C.

S 1182(h). At his immigration hearing, Liang denied the alleged convictions. The Immigration Judge found the government had not met its burden of showing that Liang had been convicted in 1989, but found that it had met its burden as to the 1997 conviction, which still qualified Liang as an aggravated felon subject to removal. Liang then sought discretionary relief under former INA S 212(c).

Under former S 212(c), codified at 8 U.S.C.S 1182(c), the Attorney General or her delegates, such as the BIA, had discretionary authority to waive the deportation of a deportable alien because of extraordinary hardship to the deportee or his family, or other exceptional circumstances.3 Although the statutory provision itself referred only to aliens in exclusion proceedings, it had been interpreted also to apply to aliens in deportation proceedings. See Katsis v. INS, 997 F.2d 1067, 1070 (3d Cir. 1993); Francis v. INS, 532 F.2d 268, 273 (2d Cir. 1976).4 In 1996, S 212(c) was amended by S 440(d) of AEDPA to preclude deportable aliens who had been convicted of an aggravated felony or

_____

3. Section 212(c) provided, in pertinent part:

> Aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney

> General [despite being otherwise excludable] .. . . The first sentence of this subsection shall not apply to an alien who has been convicted of one or more aggravated felonies and has served for such felony or felonies a term of imprisonment of at least 5 years.

8 U.S.C. S 1182(c) (1994) (repealed 1996).

4. IIRIRA eliminated any statutory distinctions between deportable and excludable aliens. Prior to IIRIRA, deportable aliens were defined in 8 U.S.C. S 1251(a) as those aliens who resided within the United States but who could be deported for certain reasons. In contrast, excludable aliens were defined in 8 U.S.C. S 1182(a) as those aliens who could be denied entry into the United States.

two crimes of moral turpitude from receiving waivers, regardless of the prison term served for such crimes. See DeSousa v. Reno, 190 F.3d 175 (3d Cir. 1999) (rejecting equal protection challenge to AEDPA S 440(d) because of the distinction made between deportable and excludable aliens).

When, effective April 1, 1997, INA S 212(c) was repealed in its entirety by S 304(b) of IIRIRA, it was replaced with another discretionary relief provision, INA S 240A. See IIRIRA S 304(a) (adding new INA S 240A, codified at 8 U.S.C. S 1229b). That section permits the Attorney General or her delegates in her discretion to cancel removal in certain circumstances, but not when the alien has been convicted of an aggravated felony as defined by the INA, making each of the petitioners ineligible for relief under that section. As a result of these statutory changes the BIA affirmed the decisions of the Immigration Judges that the petitioners were ineligible for relief under former S 212(c).

Petitioners, relying on the principles set forth in Landgraf v. USI Film Products, 511 U.S. 244 (1994), and elaborated in Lindh v. Murphy, 521 U.S. 320 (1997), and Martin v. Hadix, 527 U.S. 343 (1999), argue that the BIA erred by interpreting IIRIRA S 304(b) to apply retroactively to criminal conduct and convictions that occurred before the effective date of the section. Thus, petitioners are challenging the BIA's legal interpretation of the statute as depriving it of discretion rather than the exercise of any discretion by the BIA. Rodriguez also argues that if IIRIRA S 304(b) does apply to him, then the section is unconstitutional because it violates his constitutional rights to due process and equal protection.5

_____

5. Rodriguez also argues, for the first time in his reply brief, that IIRIRA
S 304(b) does not apply to him because the INS issued a detainer notice prior to April 1, 1997, and therefore that his case was pending when S 304(b) became effective. See Sandoval v. Reno, 166 F.3d 225, 239–42 (3d Cir. 1999) (holding that AEDPA S 440(d) does not apply retroactively to cases pending on the date of AEDPA's enactment); cf. Wallace v. Reno, 194 F.3d 279 (1st Cir. 1999) (holding that case was commenced for retroactivity purposes when the INS issued an order to show cause even though the INS did not file that order to show cause with the

8

With these statutory and constitutional claims in mind, we turn to the jurisdictional issue presented in these cases.

III.

DISCUSSION

A.

Scope of Jurisdictional Inquiry

Although the government's motions to dismiss are directed to the pending petitions for review, determination of our jurisdiction over the petitions for review is inextricably intertwined with the question whether the district courts have continued habeas jurisdiction. The imperative to avoid a constitutional crisis that might arise were the writ of habeas corpus effectively suspended or were there no viable means for judicial review of constitutional claims necessarily affects, even if indirectly, the construction of the relevant statutory provisions. The viability of habeas jurisdiction is not a mere hypothetical issue, as petitioner Rodriguez has filed, in addition to the petition for review before us, a petition for habeas corpus in the district court presenting the same or similar issues, which that court has not yet decided.

Indeed, recently, in Max-George v. Reno, No. 98-21090, 2000 WL 220502 (5th Cir. Feb. 24, 2000), the Court of Appeals for the Fifth Circuit declined to consider the tension its reading of the permanent rules as stripping the district courts of habeas corpus jurisdiction created with the Suspension Clause because the issue was raised on an appeal from the denial of habeas corpus rather than on a

_____

immigration court until after AEDPA's enactment). Because of our ultimate disposition of this matter, we do not consider whether Rodriguez has waived this claim. See Republic of Philippines v. Westinghouse Elec. Corp., 43 F.3d 65, 71 n.5 (3d Cir. 1995) (noting requirement that appellants raise issues in opening brief).

9

petition for review, as here. The court stated,"had Max-George filed a petition for review, we would have to decide whether the preclusion of habeas review to him can be reconciled both with the constitutional limitation on the `suspension' of habeas corpus and the constitutional guarantee of due process." Id. at *6.

Rodriguez has attempted to invoke the courts' jurisdiction both through filing a petition for review in this court and filing a petition for a writ of habeas corpus in the district court. He did move in this court to stay briefing on the petition for review until the habeas matter was decided, but we proceeded to hear the pending consolidated petitions for review. Counsel advised us at the oral argument that there has been no action taken in the district court, presumably because that court is awaiting a decision on the jurisdictional issue in this case. The interrelationship between the issues is therefore evident.

The ultimate question in these cases is one of forum: a

determination of which federal court, if any, has jurisdiction to hear petitioners' claims.

B.

AEDPA and the Transitional Rules of IIRIRA

The jurisdictional issue arose with Congress's enactment of AEDPA on April 24, 1996. That statute included two judicial review provisions relevant to immigration cases. Section 401(e) of AEDPA repealed S 106(a)(10) of the INA, which had expressly provided for habeas review of immigration cases in the federal courts; S 440(a) of AEDPA substituted the following language in its place:"Any final order of deportation against an alien who is deportable by reason of having committed a criminal offense [covered in the deportation provisions of the INA] shall not be subject to review by any court." 8 U.S.C. S 1105a(a)(10) (repealed by IIRIRA S 306(b) with respect to deportation proceedings commenced after April 1, 1997). On September 30, 1996, Congress enacted IIRIRA, which, as noted above, changed many of the amendments that AEDPA had made.

10

In Morel v. INS, 144 F.3d 248 (3d Cir. 1998), we held that AEDPA S 440(a) removed our jurisdiction to review a claim of legal error on petition for review brought by an alien with a criminal conviction. Id. at 250-51. In that case, we did not reach the issue of whether the district courts continued to have habeas jurisdiction over those claims under AEDPA or the transitional rules of IIRIRA.

In Sandoval v. Reno, 166 F.3d 225 (3d Cir. 1999), we were faced with that issue. Sandoval had filed a petition for review of the BIA's entry of a final order of deportation against him. In addition, he had filed a petition for a writ of habeas corpus in the district court. He argued that AEDPA's amendment of S 212(c) to permit discretionary waiver of removal for aliens in exclusion proceedings but not for aliens in deportation proceedings did not apply to cases pending on the date of enactment of AEDPA, and that if it did apply to him S 212(c) as amended by AEDPA violated equal protection. The district court agreed with Sandoval's statutory construction and granted the writ on the ground that AEDPA S 440(d) did not apply to cases that were pending when the statute was enacted. The government appealed, and that appeal was consolidated with Sandoval's petition for review.

The government argued that AEDPA and the transitional rules of IIRIRA divested the district courts of habeas jurisdiction. In forwarding that position, it relied on the

following statutory provisions: AEDPA SS 401(e) and 440(a), referred to above; IIRIRA S 309(c)(4)(G), a transitional rule which provides that "there shall be no appeal permitted in the case of an alien who is inadmissible or deportable by reason of having committed a criminal offense [covered in the deportation provisions of the INA]," and IIRIRA S 306(a), which amended INA S 242(g) to provide:

> Exclusive Jurisdiction. Except as provided in this section and notwithstanding any other provision of law, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this Act.

8 U.S.C. S 1252(g). The government contended that AEDPA and the transitional rules of IIRIRA stripped the district courts of their habeas jurisdiction over all immigration cases and placed exclusive jurisdiction in the courts of appeals. Further, to avoid a jurisdictional scheme that provided no judicial review of constitutional claims brought by aliens with criminal convictions, the government encouraged us to read an exception for those claims into transitional rule S 309(c)(4)(G).

We relied on the "longstanding doctrine disfavoring repeal of jurisdictional statutes by implication" as recently articulated by the Supreme Court in Felker v. Turpin, 518 U.S. 651 (1996), to hold, contrary to the government's position, that neither AEDPA nor the transitional rules of IIRIRA divested the district courts of habeas jurisdiction because none of the applicable provisions expressly stated that Congress sought to preclude habeas jurisdiction as it exists under 28 U.S.C. S 2241. Sandoval , 166 F.3d at 231. We examined the Supreme Court's age-old decisions in Ex parte McCardle, 74 U.S. (7 Wall.) 506 (1868), and Ex parte Yerger, 75 U.S. (8 Wall.) 85 (1868), together with Felker, and concluded:

> Read together, McCardle, Yerger, and Felker establish the propositions that courts should not lightly presume that a congressional enactment containing general language effects a repeal of a jurisdictional statute, and, consequently, that only a plain statement of congressional intent to remove a particular statutory grant of jurisdiction will suffice.

Sandoval, 166 F.3d at 232.

Applying these propositions to the provisions of AEDPA

and the transitional rules of IIRIRA, we determined that "since AEDPA S 401(e) does not manifest an intent to repeal the original grant of habeas corpus jurisdiction, currently embodied in 28 U.S.C. S 2241, the elimination of INA's reference to habeas jurisdiction does not overcome the presumption against finding a repeal of habeas corpus by implication." Id. at 234-35. Similarly, in analyzing the effect of IIRIRA transitional rule S 309(c)(4)(G) and AEDPA S 440(a) on the district courts' habeas jurisdiction, we stated that

12

"[n]either of these provisions specifically mentions jurisdiction under S 2241. Hence, under Felker and Yerger, we do not find a sufficiently clear statement of congressional intent to repeal the general grant of habeas jurisdiction." Id. at 235. And finally, in analyzing the effect of IIRIRA S 306(a), amending INA S 242(g), we determined that "[a]s there is no express reference to jurisdiction under 28 U.S.C. S 2241 in this provision, the rule disfavoring implied repeals requires us to conclude that jurisdiction under S 2241 is preserved . . . ." Id. at 236.

We held that no repeal would be implied in light of the absence of an express revocation of the district courts' habeas jurisdiction. Further, we concluded that Sandoval's statutory claim, as well as any constitutional claim, was cognizable in a habeas corpus proceeding, "[i]nasmuch as the language of the habeas corpus statute encompasses claims that one `is in custody in violation of the Constitution or laws or treaties of the United States,' 28 U.S.C. S 2241(c)(3)." Id. at 238. In doing so, we left open the question whether substantial constitutional questions might still be brought by an alien with a criminal conviction on petition for review. See id. at 238 n.6 ("Because of our conclusion that [habeas jurisdiction] covers statutory, as well as constitutional claims, we need not decide whether the claimed existence of jurisdiction in the courts of appeals to review substantial constitutional claims, but not statutory claims, would be an adequate alternative.").

Shortly after our decision in Sandoval, the Supreme Court decided Reno v. American-Arab Anti-Discrimination Committee, 525 U.S. 471 (1999), in which it rejected the government's position that the limitation of court jurisdiction in the new INA S 242(g) covered all or nearly all deportation claims. Instead, the Court held thatS 242(g), which applies to cases under both the permanent and transitional rules, covers only three discrete actions of the Attorney General: "her `decision or action' to`commence proceedings, adjudicate cases, or execute removal orders.' " Id. at 482.

After American-Arab, we held in Catney v. INS, 178 F.3d 190 (3d Cir. 1999), that under AEDPA and the transitional rules of IIRIRA any challenge by a criminal alien to the

13

BIA's interpretation of the immigration laws or to the constitutionality of those laws, even a claim involving substantial constitutional issues, must be made through a habeas petition rather than through a petition for review. By answering the question left open in Sandoval , we foreclosed any exception to the bar on petition for review jurisdiction over criminal aliens under the transitional rules.

Finally, in DeSousa v. Reno, 190 F.3d 175 (3d Cir. 1999), the most recent decision of our series on this issue, we upheld the jurisdictional analysis of Sandoval  as consistent with the Supreme Court's decision in American-Arab. We rejected the government's assertion that constitutional and statutory challenges fall within the scope of INAS 242(g), and concluded that "American-Arab did not affect the remainder of Sandoval's rulings." Id.  at 183.

The vast majority of the other courts of appeals have adopted principles similar to those enunciated in Sandoval and have also found that district courts retain habeas jurisdiction after the enactment of AEDPA and IIRIRA's transitional rules. See Magana-Pizano v. INS, 200 F.3d 603, 609 (9th Cir. 1999) (holding that 28 U.S.C. S 2241 "remains an available remedy to those challenging executive detention" under AEDPA and the transitional rules of IIRIRA); Pak v. Reno, 196 F.3d 666, 673 (6th Cir. 1999) (following reasoning of Sandoval and Goncalves v. Reno, 144 F.3d 110 (1st Cir. 1998), and concluding that neither AEDPA amendments nor transitional rules of IIRIRA divest district courts of habeas jurisdiction because the applicable sections "[do] not refer to S 2241"); Bowrin v. INS, 194 F.3d 483, 489 (4th Cir. 1999) (per curiam) ("Finding no . . . specific reference to S 2241, we apply the long-standing rule disfavoring repeal of jurisdictional provisions by implication."); Jurado-Gutierrez v. Greene , 190 F.3d 1135, 1145-46 (10th Cir. 1999) (holding that "the lack of any mention of S 2241 habeas review in the plain language of the statute, combined with the long historical precedent surrounding habeas corpus review in immigration cases, establishes that traditional habeas review underS 2241 survived the enactment of AEDPA S 440(d) and IIRIRA S 309(c) [the transitional rules]") petition for cert. filed,

14

\_\_\_ USLW \_\_\_ (U.S. Jan. 31, 2000) (No. 99-7964); Shah v. Reno, 184 F.3d 719, 724 (8th Cir. 1999) ("In sum, we hold that Congress in enacting AEDPA and IIRIRA in 1996, did not clearly and expressly repeal 28 U.S.C. S 2241."); Mayers v. INS, 175 F.3d 1289, 1301 (11th Cir. 1999) (holding that AEDPA's repeal of INA S 106(a)(10) did not repeal district courts' habeas jurisdiction for cases falling under the transitional rules of IIRIRA); Henderson v. INS , 157 F.3d 106, 118-22 (2d Cir. 1998) (relying on earlier decision in Jean-Baptiste v. Reno, 144 F.3d 212 (2d Cir. 1998), and concluding that without express reference to S 2241 it would not find bar on federal courts' habeas jurisdiction), cert. denied, 119 S. Ct. 1141 (1999); Goncalves v. Reno, 144 F.3d 110, 119-23 (1st Cir. 1998) (concluding that repeal of INA S 106(a)(10) did not repeal habeas jurisdiction because there is no explicit reference in AEDPA to habeas jurisdiction under S 2241), cert. denied , 119 S. Ct. 1140 (1999); cf. Requena-Rodriguez v. Pasquarell, 190 F.3d 299 (5th Cir. 1999) (holding that habeas jurisdiction exists under transitional rules but implying that the court might conclude in a case under the permanent rules that language in S 242(g) and S 242(b)(9) is sufficiently express to preclude habeas jurisdiction). Only the Court of Appeals for the Seventh Circuit, interpreting AEDPA and the transitional rules, has held to the contrary. See La Guerre v. Reno, 164 F.3d 1035 (7th Cir. 1998) (holding that AEDPA S 440(a), amending INA S 106(a), divested district courts of habeas jurisdiction), cert. denied, 68 USLW 3154 (U.S. Feb. 22, 2000) (No. 99-418).

C.

The Permanent Rules of IIRIRA

Because deportation proceedings were not initiated against any of the petitioners until after April 1, 1997, the permanent rules apply to their cases. The government invokes several jurisdictional provisions that are part of the permanent rules in support of its motions to dismiss. It argues that under these provisions, "the court of appeals is now the exclusive forum for all immigration matters," including "the interpretation of statutory and constitutional

issues under 28 U.S.C. S 2241." Respondent's Brief at 12. According to the government, therefore, the permanent rules divest the district courts of their habeas jurisdiction where the transitional rules, as we held in Sandoval, did not. Further, the government asserts that "[o]nce the court determines that a petitioner is an alien who has been ordered removed for a qualifying criminal conviction," the court of appeals lacks jurisdiction "to review any other

challenge the petitioner might raise to his removal proceedings." Id. at 4. It argues that because the permanent rules were not before us in Sandoval , that decision is inapplicable.

The first of the provisions to which the government refers, INA S 242(a)(2)(C), provides:

> Notwithstanding any other provision of law, no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a criminal offense covered in section 1182(a)(2) or 1227(a)(2)(A)(iii), (B), (C), or (D) of this title, or any offense covered by section 1227(a)(2)(A)(ii) of this title for which both predicate offenses are, without regard to their date of commission, otherwise covered by section 1227(a)(2)(A)(i) of this title.

8 U.S.C. S 1252(a)(2)(C).

INA S 242(a)(1), also in the permanent rules, provides:

> Judicial review of a final order of removal (other than an order of removal without a hearing pursuant to section 1225(b)(1) of this title) is governed only by chapter 158 of Title 28, except as provided in subsection (b) of this section and except that the court may not order the taking of additional evidence under section 2347(c) of Title 28.

8 U.S.C. S 1252(a)(1).

The government places its principal reliance for its argument that the permanent rules divest the district courts of habeas jurisdiction on INA S 242(b)(9), which provides:

> Judicial review of all questions of law and fact, including interpretation and application of

16

> constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of afinal order under this section.

8 U.S.C. S 1252(b)(9). The government argues that because INA S 242(b)(2) requires that all petitions for review "be filed with the court of appeals for the judicial circuit in which the immigration judge completed the proceedings," 8 U.S.C. S 1252(b)(2), S 242(b)(9) necessarily divests the district

courts of their habeas jurisdiction.

There is no reason why the jurisdictional ruling in this case under the permanent rules should be any different than that we reached under the transitional rules. Although the text of these provisions differs somewhat from the sections of the transitional rules that were considered in Sandoval, those sections, AEDPA SS 440(a), 401(e), IIRIRA S 309(c)(4)(G), and INA S 242(g), used language comparably comprehensive. Indeed, the phrase "notwithstanding any other provision of law" in INA S 242(a)(2)(C) also appears in INA S 242(g), which we did consider in Sandoval. See Sandoval, 166 F.3d at 236-38. That phrase did not persuade us then to hold that Congress had implicitly repealed S 2241 habeas jurisdiction; there is no reason why it would have a different effect now.

The difficulty with the government's effort to convince us that the language of S 242(b)(9), or of any of the permanent rules, requires a different result than that reached in Sandoval is that no language in the permanent rules fills the gap we found in Sandoval. None of the provisions, including INA S 242(b)(9), expressly refers to habeas jurisdiction or to 28 U.S.C. S 2241. None expressly revokes habeas jurisdiction.

As we explained in Sandoval, a repeal of habeas jurisdiction will not be found by implication. This is the holding of the Supreme Court's 1996 decision in Felker, 518 U.S. 651. In that case, the Supreme Court considered whether Title I of AEDPA, which imposed significant restrictions on the availability of the writ of habeas corpus, deprived the Court itself of jurisdiction to entertain original

17

habeas petitions. The Court noted that no provision of Title I mentioned its authority to hear habeas petitionsfiled as original matters. Guided by its earlier decision in Ex Parte Yerger, 75 U.S. (8 Wall.) 85 (1868), the Court therefore held that:

> Although [AEDPA] precludes us from reviewing, by appeal or petition for certiorari, a judgment on an application for leave to file a second habeas petition in district court, it makes no mention of our authority to hear habeas petitions filed as original matters in this Court. As we declined to find a repeal [of our power to entertain habeas petitions in Yerger] we decline to find a similar repeal of S 2241 of Title 28 . . . by implication now.

Id. at 661.

The holding of the Supreme Court is clear. A repeal of habeas jurisdiction can only be effected by express congressional command. That was the basis for our decision in Sandoval. See Sandoval, 166 F.3d at 232 (examining the propositions established by the Supreme Court in Felker, Yerger, and McCardle). That holding is as applicable to the permanent rules as it was to the transitional rules in Sandoval.

The government is correct that Sandoval involved only the transitional rules, not the permanent rules, but the legal principle relied on by this court transcends the narrow context of the transitional rules. See, e.g., John Hancock Mut. Life Ins. Co. v. Olick, 151 F.3d 132, 139 (3d Cir. 1998) ("To be sure, there may be a number of factual grounds to distinguish our holding in [an earlier case], but the legal principle announced in that case directly controls the issue presented . . . ."). We unquestionably interpreted Felker in Sandoval as requiring an explicit reference to habeas jurisdiction or its statutory provision in order tofind an express congressional intent to repeal. As this court has frequently noted, "[A] panel of this court cannot overrule a prior panel precedent." O. Hommel Co. v. Ferro Corp., 659 F.2d 340, 354 (3d Cir. 1981); see Internal Operating Procedures, United States Court of Appeals for the Third Circuit, Rule 9.1 ("[T]he holding of a panel in a reported

18

opinion is binding on subsequent panels. . . . Court in banc consideration is required [to overrule such a holding].").

This is not a case in which there have been "intervening developments" that counsel reevaluation of the underlying premise of Sandoval. Cf. Reich v. D.M. Sabia Co., 90 F.3d 854, 858–59 (3d Cir. 1996) (finding that subsequent statutory amendment and Supreme Court precedent permitted reevaluation of earlier panel decision). Notwithstanding the government's suggestion to the contrary, nothing in the Supreme Court's 1999 decision in American–Arab, 525 U.S. 471, bears on our reasoning in Sandoval.

American–Arab arose after the INS instituted deportation proceedings against several aliens who belonged to the Popular Front for the Liberation of Palestine, a group that the government characterized as a terrorist group. The aliens filed suit in district court seeking injunctive and declaratory relief on the ground that the INS was selectively enforcing immigration laws against them in violation of their First and Fifth Amendment rights. After Congress passed IIRIRA, the government sought to dismiss the case

for lack of jurisdiction, arguing that INA S 242(g), made applicable by S 306(c)(1) of IIRIRA to the aliens' cases, deprived the courts of jurisdiction over the selective enforcement claim. In reconciling an apparent conflict between IIRIRA S 306(c)(1), which made INAS 242(g) applicable to all cases, including those pending on the date of IIRIRA's enactment, and transitional rule S 309(c)(1)(B), which stated the general rule that the amendments of IIRIRA would not apply to pending cases, the Supreme Court rejected a broad reading of INA S 242(g). The Court held that S 242(g) applied only to "three discrete events along the road to deportation": the Attorney General's uniquely discretionary decisions to commence proceedings, adjudicate cases, or execute removal orders. Id. at 482. It compared the limited scope of that section with the more expansive reach of S 242(b)(9) (a "zipper" clause). Id. at 483. Because S 242(g) did apply to the Attorney General's decision to prosecute the plaintiff aliens, the Court held that the district court lacked jurisdiction over the plaintiffs' suit.

19

The government argues that it is clear from the Court's characterization in American Arab of S 242(b)(9) as an "unmistakable `zipper' clause," id., that the courts of appeals are the exclusive forum for all immigration claims. That reading attributes to the discussion in American Arab a meaning that extends beyond the matter at issue, which was the interplay between IIRIRA SS 306(c)(1), 309(c)(1)(B), and INA S 242(g).

The language of INA S 242(b)(9), even without the Court's comparing it with that of S 242(g), makes it evident that S 242(b)(9) was intended to apply to a broader range of decisions than the three categories to which the Court referred in American-Arab. However, that does not mean that the Court intended to hold, without explicit discussion, that S 242(b)(9) has the radical effect of eliminating habeas jurisdiction. In fact, the underlying suit in American-Arab was not a habeas petition under 28 U.S.C. S 2241 but a civil suit for injunctive and declaratory relief that relied for its jurisdiction on 28 U.S.C. S 1331. The Supreme Court never considered whether IIRIRA divests the district courts of habeas jurisdiction. Rather, the Court noted that there was disagreement in the courts of appeals on the issue and expressed no view on the issue's resolution. See id. at 480 & n.7. Although we agree that S 242(b)(9) clearly expresses congressional intent that judicial review of questions arising from a proceeding brought to remove an alien be conducted under the INA in the courts of appeals, we do not agree that it clearly expresses congressional intent that the district courts be divested of their habeas jurisdiction

under S 2241, the issue considered here.

The government notes that the Court of Appeals for the Eleventh Circuit relied on S 242(b)(9) in holding that the district courts no longer have habeas jurisdiction under 28 U.S.C. S 2241 to review any challenge to an alien's removal proceedings. See Richardson v. Reno (Richardson II), 180 F.3d 1311, 1315 (11th Cir. 1999), petition for cert. filed, 68 USLW 3367 (U.S. Nov. 23, 1999) (No. 99-887). Richardson, a thirty-year permanent legal resident in this country with convictions for firearms and drugs offenses, was detained by the INS as he attempted to re-enter the United States after a two-day trip to Haiti. He filed a petition for a writ of

20

habeas corpus, asserting that the INS's illegal detention, denial of admission, and denial of a bond hearing violated his constitutional and statutory rights as a lawful permanent resident alien. Because Richardson's removal proceedings began in October 1997, the permanent rules applied to his case.

When the case first came to the Eleventh Circuit, the court held that INA S 242(g) repealed district court habeas jurisdiction. See Richardson v. Reno (Richardson I), 162 F.3d 1338 (11th Cir. 1998). Richardson I was vacated by the Supreme Court, and remanded for reconsideration in light of its decision in American-Arab. See Richardson v. Reno, 119 S.Ct. 2016 (1999). On remand, the court of appeals recognized that, in light of the Supreme Court's narrow reading of S 242(g), that section did not divest the district court of habeas jurisdiction over Richardson's case. Nevertheless, the court reaffirmed its earlier decision on the ground that Richardson I rested not just on its interpretation of INA S 242(g) but also of INAS 242(b)(9) as well as the "overall judicial review scheme enacted in INA S 242(b)." Richardson II, 180 F.3d at 1314. The court concluded that "[a]ny constitutional infirmities Richardson perceives in th[e] INA-proscribed judicial review must be raised in an attack on the constitutionality of INA S 242(a)(2)(C) only in the court of appeals and only after a final removal order." Id. at 1316 (quoting Richardson I, 162 F.3d at 1376).

More recently, the Court of Appeals for the Fifth Circuit has followed the Eleventh Circuit in holding that under the permanent rules district courts are divested of their habeas jurisdiction. See Max-George v. Reno, No. 98-21090, 2000 WL 220502 (5th Cir. Feb. 24, 2000). Although the Fifth Circuit had interpreted the transitional rules as preserving the district courts' habeas jurisdiction, it had foreseen the possibility of a different result under the permanent rules.

See Requena-Rodriquez, 190 F.3d at 305-06. Thus, its decision in Max-George was not unexpected. It reasoned that the phrase "notwithstanding any other provision of law" in INA S 242(a)(2)(C), which had not appeared before it under the transitional rules, "clearly precludes habeas jurisdiction under 28 U.S.C. S 2241." Max-George, 2000 WL

220502 at *4.6 In contrast, as we noted above, we did consider that phrase, which appears in S 242(g), in Sandoval. See Sandoval, 166 F.3d at 236-38.

Moreover, the "[n]otwithstanding any other provision of law" phrase that the court in Max-George found dispositive does not stand alone. The language that begins S 242(a)(2)(C) reads: "Notwithstanding any other provision of law, no court shall have jurisdiction to review . . . ." 8 U.S.C. S 1252(a)(2)(C) (emphasis added). In Sandoval, we reviewed the history of the Supreme Court's consistent affirmation since at least as far back as 1888 of the right of aliens to availability of the writ of habeas corpus in the district courts despite statutory language that restricted or eliminated judicial review of executive action in immigration matters. Sandoval, 166 F.3d at 233-34. We stated that when viewed in light of the history of the Court's treatment of habeas jurisdiction in deportation cases, the references to "review" in AEDPA and to "appeal" in IIRIRA are properly understood as relating to judicial review under the APA. Id. at 235. We continued, "This is so because in the immigration context, the Court has historically drawn a sharp distinction between `judicial review' -- meaning APA review -- and the courts' power to entertain petitions for writs of habeas corpus." Id. The court's conclusion in Max-George that the writ of habeas corpus "is merely an `other provision of law,' " Max-George, 2000 WL 220502 at *4, that can be swept away by the phrase "[n]otwithstanding any other provision of law" fails to recognize or give effect to this historical distinction maintained by successive Supreme Court opinions.

The holdings of both Richardson cases and Max-George that Congress need not mention habeas or S 2241 to repeal the district courts' habeas jurisdiction are at odds not only with our reasoning in Sandoval but with the reasoning of the other courts of appeals that have read the Supreme

_____

6. We note in passing that Max-George had already been deported and the government argued that the case was moot. The court overcame the mootness argument by holding that a collateral consequence of his deportation was his future inadmissibility as a matter of law, whether he chose to return or not.

Court's precedent in Yerger and Felker to require explicit statutory reference to habeas or S 2241 to effect congressional repeal of habeas jurisdiction. See Magana–Pizano, 200 F.3d at 608–09 (interpreting Felker to require explicit reference to S 2241 to effect repeal of habeas corpus jurisdiction, noting that "[p]resumably, the holding in Felker placed Congress on notice that it could repeal habeas jurisdiction under S 2241 only by express command, and not by implication"); Pak, 196 F.3d at 673 ("Although AEDPA S 401(e) pointedly refers to INA S 106(a)(10), it does not refer to S 2241. Thus, despite the fact that AEDPA S 401(e) expressly repealed habeas jurisdiction under INA S 106(a)(10), absent a clear statement from Congress, we decline to interpret that provision as also repealing general habeas jurisdiction under S 2241."); Bowrin, 194 F.3d at 489 ("We believe that had Congress intended to eliminate all habeas jurisdiction under S 2241, it would have done so by using the same explicit references it used to repeal INA S 106(a)(10)."); Jurado–Gutierrez, 190 F.3d at 1145–46 ("Wefind the lack of any mention of S 2241 habeas review in the plain language of the statute, combined with the long historical precedent surrounding habeas corpus review in immigration cases, establishes that traditional habeas review underS 2241 survived the enactment of AEDPA S 440(d) and IIRIRA S 309(c)."); Shah, 184 F.3d at 724 ("AEDPA rather pointedly refers only to Section 106(a)(10) of the old Act. No reference is made to the general federal habeas corpus statute, though that statute was for decades routinely used to review executive decisions in immigration matters . . . ."); Goncalves, 144 F.3d at 119 ("Felker makes clear that if Congress intends to repeal or restrict habeas jurisdiction under S 2241, it must say so explicitly."). But see LaGuerre, 164 F.3d at 1038–39 (holding that AEDPA SS 440(a) and 401(e) divested the district courts of habeas jurisdiction, even without explicit reference to S 2241). 7

_____

7. It is of some interest that while Richardson I was awaiting reconsideration in light of American–Arab, the Eleventh Circuit decided Mayers v. INS, 175 F.3d 1289, 1299–1300 (11th Cir. 1999), a transitional rule case, in which the court applied the presumption against implied repeal of habeas jurisdiction articulated by the Supreme Court in Felker and held that neither AEDPA nor the transitional rules

The government argues that we should adopt the holding of Richardson II (and presumably now would include Max–

George) rather than adhere to the reasoning we articulated in Sandoval. As we have explained, we see no reason to abandon the path taken in Sandoval. We continue to believe that had Congress intended to eliminate all habeas jurisdiction under S 2241, it would have done so by making its intent explicit in the language of the statute. Furthermore, as we recognized in Sandoval, this approach obviates the serious constitutional problems that would arise were we to adhere to our previous opinions holding we have no jurisdiction over petitions for review filed by an alien with a criminal conviction and read the permanent rules to strip the district courts of habeas jurisdiction.

The Suspension Clause provides that "[t]he Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." U.S. Const. art. I, S 9, cl. 2. The Max-George court recognized that "[t]o some degree, IIRIRA's stripping of S 2241 jurisdiction implicates the guarantee that the `Privilege of the Writ' preserved by the Constitution cannot be suspended," but it then stated that the distinction between the scope of the writ of habeas corpus preserved in the Constitution and the scope of the writ granted by S 2241 "is immaterial when considered in the immigration context" where Congress may make rules "that would be unacceptable if applied to citizens." Max-George, 2000 WL 220502 at *6 (internal quotations and citations omitted). We agree, of course, with the proposition that habeas corpus need not preserve review of discretionary decisions, but to the extent the court's discussion suggests that aliens are not entitled to the constitutional protection of habeas corpus, the Supreme Court cases cited and discussed in detail in Sandoval, see 166 F.3d at 233-34, pronounce precisely the opposite. See, e.g., United States v.

_____

of IIRIRA divested the district courts of habeas jurisdiction because none of the provisions expressly referred to 28 U.S.C.S 2241 or habeas jurisdiction. When the court re-affirmed its Richardson I analysis of Felker in Richardson II, it sought to distinguish Mayers on factual and statutory grounds. See 180 F.3d at 1316 n.6.

24

Jung Ah Lung, 124 U.S. 621(1888) (alien entitled to writ of habeas corpus to reenter United States); Nishimura Ekiu v. United States, 142 U.S. 651, 660 (1892) ("An alien immigrant, prevented from landing . . . is doubtless entitled to a writ of habeas corpus to ascertain whether the restraint is lawful."); Heikkila v. Barber , 345 U.S. 229, 234-35 (1953) (statute conferring finality on deportation decisions of Attorney General precluded "judicial intervention in deportation cases except insofar as it was

required by the Constitution").

The government asserts that our concerns about avoiding constitutional problems are unfounded because the judicial review provisions applicable to the cases before us can be read to satisfy the Suspension Clause. Congress may divest the district courts of habeas jurisdiction without violating the Suspension Clause so long as it substitutes "a collateral remedy which is neither inadequate nor ineffective to test the legality of a person's detention." Swain v. Pressley, 430 U.S. 372, 381 (1977).

Although the courts of appeals generally retain jurisdiction under new INA S 242(a)(1) to review an alien's challenge to his or her final order of removal via the alien's petition for review, a petition for review brought by an alien with a criminal conviction is excepted. New INA S 242(a)(2)(C) provides that "[n]otwithstanding any other provision of law, no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a criminal offense covered in [various sections of the INA]." 8 U.S.C. S 1252(a)(2)(C).

The government argues that, irrespective of this limitation on our petition for review jurisdiction, the courts of appeals retain jurisdiction under S 242 over petitions for review "to test the legality of a criminal alien's removal order." Respondent's Brief at 20. Apparently in response to the strong argument made by the amici ACLU and law professors that if the INA provides no review for petitioners' statutory as well as constitutional claims the Suspension Clause would not be satisfied, the government argues that we do have jurisdiction to review the merits of petitioners' statutory as well as constitutional claims in such cases. It

25

asserts that under S 242(a)(2)(C) we have jurisdiction to determine whether each petitioner "(1) [is] an alien, (2) is removable, and (3) is removable by reason of having committed a qualifying crime. . . ." Respondent's Brief at 19. According to the government, the determination of removability is "very broad," permitting us to judge the merits of petitioners' statutory and constitutional challenges on a petition for review. Transcript of argument, Dec. 20, 1999 at 61.

If we were to accept this suggestion, it would create the awkward situation of requiring analysis of the merits of a petitioner's challenge in making a preliminary jurisdictional determination. Moreover, the government's position at this juncture is difficult to reconcile with its earlier position

taken in Sandoval that at most the courts of appeals could review "substantial constitutional" issues on petition for review.8 Our response in Sandoval, noting that neither the

_____

8. The government's different positions here and in Sandoval on the issue of the courts' jurisdiction to hear a statutory claim raised by an alien with a criminal conviction is illustrative of its vacillation on this

issue. In its brief on appeal from the district court's ruling on Sandoval's
habeas petition, the government argued that there was no jurisdiction either in the court of appeals or in the district court to hear aliens' statutory claims, maintaining that the Suspension Clause was not implicated because "judicial review required under the Suspension Clause extends only to claims of substantial constitutional error amounting to a fundamental miscarriage of justice." Government Brief at 30, Sandoval v. Reno, No. 98-1099. It took the same position in its brief on Sandoval's petition for review, where it stated,"Sandoval's contention that the Board erred as a matter of statutory construction in concluding that AEDPA S 440(d) applies to cases pending upon enactment is a non-reviewable claim of legal error." Government Brief at 5, Sandoval v. INS, No. 98-3214. At argument in the cases before us, the government took a considerably more expansive view of the scope of our jurisdiction to hear the petitioners' statutory claims, stating"[I]n determining whether a criminal alien is removable, you need to look at whether his removal order is constitutionally and statutorily legal , whether it's valid or not,
before you can decide whether the bar applies to him." Transcript of argument, Dec. 20, 1999 at 66 (emphasis added). On several occasions during the argument, the government set forth its position that "there is review that is commensurate with 2241 review in this court under 242. This court can look at and answer any question that this alien could

26

statute nor the legislative history support such a statutory construction, is even more applicable here.

> This argument must fail because of the absence of any
> support, either in the statute or in the legislative
> history. The government's briefs cite no provision of
> AEDPA or IIRIRA that supports its reading and it
> conceded at oral argument that there is no specific
> provision granting us jurisdiction over substantial
> constitutional claims. Although the government's
> argument would have more force if there were a
> constitutional imperative to read the 1996 statutes in
> that manner, our conclusion that the statutes have left
> habeas jurisdiction intact in the district courts removes
> any such imperative.

Sandoval, 166 F.3d at 237–38. For the same reason, we do not see how INA S 242 can support the broader position the government now takes.

On the contrary, the language of S 242(a)(2)(C) makes clear that we lack jurisdiction over the petitions for review filed by Cinquemani, Rodriguez, and Liang in the cases before us. The effect of S 242(a)(2)(C) is similar to that of IIRIRA S 309(c)(4)(G), which we interpreted in Catney, 178 F.3d 190, and to that of AEDPA S 440(a), which we interpreted in Morel, 144 F.3d 248.

Like Catney and Morel, petitioners in the cases before us do not dispute that they are aliens with criminal convictions that render them removable under the INA. In other words, they do not dispute that they are aliens who are "removable by reason of having committed a[specified] criminal offense." 8 U.S.C. S 1252(a)(2)(C). Rather, they raise statutory challenges to the BIA's interpretation of recent amendments and constitutional challenges to the statute itself, seeking the availability of a discretionary

_____

raise under 2241." Id. at 65. The government's fluctuation strengthens our decision to base our holding on our interpretation of the statutory language as preserving habeas jurisdiction under Felker rather than on the government's concessions at oral argument -- concessions from which it might retreat in the next case.

27

waiver under former INA S 212(c). We see no material distinction between the transitional rules and the permanent rules governing petitions for review of an alien with a criminal conviction. Accordingly, we hold that we lack jurisdiction under S 242(a)(2)(C) over the petitions for review.

IV.

CONCLUSION

We recognize that our decision perpetuates the division in the courts of appeals interpreting the amendments to the immigration laws. Indeed, were the judges' preferences determinative, it is likely that many would opt for a system under which aliens' challenges to nondiscretionary immigration decisions, both statutory as well as constitutional, would be reviewed directly in the courts of appeals. But that is not the way in which we read the legislation that Congress has enacted, and it is our obligation to interpret the statutes we are given, while at the same time interpreting the Constitution in accord with

the Supreme Court's precedent.

Because we lack jurisdiction under INA S 242(a)(2)(C) over the petitions for review brought by Cinquemani, Rodriguez, and Liang challenging their final orders of removal, the petitions will be dismissed without prejudice to Rodriguez's pending petition under 28 U.S.C. S 2241 for a writ of habeas corpus.

A True Copy:
Teste:

       Clerk of the United States Court of Appeals
       for the Third Circuit